**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Leigh Cady, | No. CV-19-03274-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Jessica Cady's Application for Supplemental Security Income benefits by the Social Security Administration (SSA) under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, "Pl. Br."), Defendant SSA Commissioner's Answering Brief (Doc. 18, "Def. Br."), and Plaintiff's Reply (Doc. 19, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, "R."), and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 11–33) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

On the date of the ALJ's decision, Plaintiff was 27-years-old. (Pl. Br. at 3.) She has been diagnosed with an autistic disorder and alleges disability based on her autism and other physical and mental impairments. (R. at 18–19.) Plaintiff filed her Application for Supplemental Security Income benefits on May 20, 2015, which is the date she alleges her

disability began ("onset-date"). (*Id*. at 16.) Her claim was denied initially on August 3, 2015, and upon reconsideration on January 26, 2016. (*Id*.) On January 9, 2018, Plaintiff appeared at a hearing before the ALJ. (*Id*.) On May 3, 2018, the ALJ denied Plaintiff's Application, and on March 29, 2019, the Appeals Council denied Plaintiff's Request for Review. (*Id*. at 1–6, 13–33.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: plantar fasciitis, obesity, autistic disorder, anxiety disorder, and affective disorder. (*Id*. at 18.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the disability-onset-date through the date of the decision. (*Id*. at 29.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id*. at 19.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except: [she] will be limited to the performance of occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, and involving only relatively few workplace changes. [She] will further be limited to the performance of occupations that require no more than occasional interaction with supervisors and coworkers, and no contact with the public.

(*Id*. at 22.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (*Id*. at 28.)

## II. LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.

*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two primary arguments for the Court's consideration. First, Plaintiff argues that the ALJ incorrectly evaluated the opinions of her examining and reviewing doctors. (Pl. Br. at 11.) Specifically, Plaintiff challenges the ALJ's rejection of examining

doctor Charles Carlise's entire opinion and the reviewing doctors' specific opinions that Plaintiff "can relate to coworkers and supervisors on only a superficial basis." (*Id*. at 12–15.) (R. at 26.) Second, Plaintiff argues that the ALJ incorrectly evaluated the lay witness statements in the record. For the reasons that follow, the Court agrees with Plaintiff's arguments and finds that the ALJ correctly rejected Dr. Carlise's opinion, but incorrectly rejected the reviewing doctors' opinions and the lay witness statements.

**A.   The ALJ correctly rejected Dr. Carlise's entire opinion but incorrectly rejected part of the reviewing doctor's opinions.**

Throughout her opinion, the ALJ was occasionally inconsistent in her treatment of the medical opinions of record. Nevertheless, the Court finds that the ALJ properly rejected the opinion of Dr. Carlise because it was rendered before Plaintiff's onset-date and it did not specify Plaintiff's maximum abilities within the relevant period. Conversely, the Court finds the ALJ erred in rejecting the reviewing doctors' specific opinion that Plaintiff can relate to coworkers and supervisors only on a superficial basis. Since the ALJ gave considerable weight to the rest of their opinions it was error to reject a specific part of that opinion without adequate justification.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating doctors, those who examined but did not treat the claimant are examining doctors, and those who neither examined nor treated the claimant are nonexamining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating doctor's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(c) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating doctor's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating doctor's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) Similarly, "[t]he opinion of an examining doctor is . . . [generally] entitled to greater weight than the opinion of a

nonexamining doctor." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

> **1. The ALJ correctly rejected Dr. Carlise's opinion because it was rendered before Plaintiff's disability-onset-date and did not specify Plaintiff's maximum capabilities during the relevant period.**

Dr. Carlise completed an assessment of Plaintiff's psychological limitations to facilitate the rehabilitation of Plaintiff's vocational abilities. (R. at 379.) Dr. Carlise performed several assessments of Plaintiff and thoroughly explained the results and his conclusions. (*Id.* at 380–92.) Notably, Dr. Carlise found that Plaintiff's intellectual abilities were relatively strong relative to those diagnosed with autism, but that her adaptive functioning and emotional functioning were significantly limited. (*Id.* at 384.) Accordingly, he explained, "[her] prevocational abilities were found low. She would likely experience difficulty working steadily and productively and would need more supervision than most. Her social adjustment is low." (*Id.*)

The ALJ gave Dr. Carlise's opinion little weight for three reasons. She found that "[m]any of his statements are first nonspecific and do not relate the most that the claimant will be able to do." (*Id.*) Next, she gave less weight to the opinion because it predated Plaintiff's onset-date. (*Id.*) Finally, she gave it less weight because "th[e] statement is not consistent with the objective medical evidence of record, including descriptions of the claimant's general intellect and cognition as 'average.'" (*Id.*)

Though the ALJ occasionally treated Dr. Carlise's opinion inconsistently and relied on seemingly inapplicable medical evidence to reject it, the Court still finds that the ALJ's rejection of the opinion was not error. Preliminarily, the Court notes that the ALJ actually relied on Dr. Carlise's opinion to support various propositions throughout the opinion. (*Id.* at 23, 25.) Moreover, the Court finds that the objective medical evidence the ALJ cited to reject Dr. Carlise's findings do not justify the ALJ's rejection of the opinion. The ALJ

concluded that evidence that Plaintiff's intellect, speech and vocabulary were relatively intact undermined Dr. Carlise's opinion. This is not so. Dr. Carlise acknowledges these same findings in his opinion, but opined that other areas of functioning where Plaintiff is limited inhibit her vocational abilities—specifically, areas related to social interaction. The medical evidence the ALJ cited aligns with Dr. Carlise's opinion and does not appear to implicate the specific issues Dr. Carlise identified.

Nevertheless, the ALJ correctly rejected Dr. Carlise's opinion because it was rendered before Plaintiff's onset-date and did not specifically identify Plaintiff's maximum capabilities during the relevant period. The timing, level of explanation, and supportability of an opinion are all permissible considerations for ALJs evaluating medical opinions, and the ALJ properly relied on those considerations here. *See* 20 C.F.R. § 404.1527(c)(3), (4), (6). First, though the ALJ must consider medical opinions rendered outside the period of consideration, she still may reduce the weight given to those opinions. *See Turner v. Comm'r of Social Security,* 613 F.3d 1217, 1228–29 (9th Cir. 2010) (Gould, J., dissenting). It was appropriate for the ALJ to consider Dr. Carlise's opinion but reduce its weight because it was rendered before the relevant period.[1] Next, Dr. Carlise specified several recommendations that would "likely prove helpful" in rehabilitating Plaintiff's vocational abilities. (R. at 387.) Since his opinion was rendered before the relevant period, his opinion leaves unclear whether Plaintiff pursued these recommendations and whether her functionality was greater during the relevant period. Accordingly, the ALJ appropriately reduced the weight given to the opinion.

**2.     The ALJ did not provide a sufficient basis for rejecting the reviewing doctors' opinion that Plaintiff is limited to only superficial interaction with coworkers and supervisors.**

Two reviewing doctors opined regarding Plaintiff's functional limitations and explained, "Claimant can perform simple tasks with routine supervision. Claimant can

---

[1] Even the ALJ's reliance on timeliness is occasionally inconsistent. She relies on a statement from 20 years ago to support her finding that "[p]roviders have also often recorded the claimant maintaining normal eye contact." (R. at 24, 327.)

- 6 -

relate to supervisors and peers on a superficial work basis. Claimant cannot relate to the general public. Claimant can adapt to a work situation." (R. at 68, 82.) The ALJ gave these opinions considerable weight because they "evidenced a thorough knowledge of the claimant's longitudinal medical evidence of record . . . [t]hese sources moreover explained their conclusions . . . [and] these opinions generally accord with the objective medical evidence." (*Id*. at 26.) However, the ALJ specifically rejected their opinion that Plaintiff can have only superficial interaction with coworkers and supervisors. (*Id*.) The ALJ's justification was that the reviewing doctors did not treat or examine Plaintiff, did not review the most recent medical records, and the specific findings did not comport with the medical evidence. (*Id*.)

The Court finds that the ALJ's rejection of the reviewing doctors' specific findings was error. Initially, the ALJ's rejection of the specific findings stands in stark contrast to her giving considerable weight to the same opinions. After all, the ALJ credited the opinions because they were, in her opinion, well-explained, well-evidenced, and well-supported. (*Id*.) In rejecting the specific findings that Plaintiff can interact with coworkers and supervisors on only a superficial basis, the ALJ backtracked. She found the opinions have "staled", were undermined by the lack of a treating or examining relationship, and were inconsistent with the objective medical evidence. The Court finds these contradictory conclusions irreconcilable. The ALJ's opinion leaves unclear why her reasons for rejecting the reviewing doctors' specific opinions do not apply with equal force to their global opinions, which she gave considerable weight to.

The ALJ was required to provide clarity here. Of course the reviewing doctors did not examine or treat Plaintiff, but that alone does not justify rejecting their specific findings, especially after the ALJ had already concluded their opinions were well-reasoned and well-supported. Additionally, though the ALJ correctly noted that the reviewing doctors had not reviewed the most recent medical records, this rationale applies equally to the rest of the opinion. Further, the ALJ did not specify any findings in the most recent records that undermine the reviewing doctors' specific findings. Absent some

specification, it is unclear what evidence in any record, recent or otherwise, contradicts the reviewing doctors' specific findings.[2] Accordingly, this rationale fails too. Finally, the objective evidence the ALJ cited does not undermine the specific findings the ALJ rejected. The ALJ cited records that demonstrate Plaintiff regularly exhibited normal mood and affect. Absent some explanation, the Court is in the dark as to why these records undermine the conclusion that Plaintiff can interact only superficially with coworkers and supervisors.

The Court is unpersuaded by Defendant's arguments that the ALJ adequately accounted for Plaintiff's limitations by limiting her to "no more than occasional interaction with supervisors and coworkers, and no contact with the public." (Def. Br. at 13-14; R. at 22.) Defendant also argues that there is no clear difference between occasional interaction with supervisors and coworkers and superficial interaction. (Def. Br. at 13.) Defendant is correct that it is unclear whether there is a difference between the two limitations. The ALJ apparently thought there is since she specifically rejected the superficial-interaction-limitation. Ultimately, it is the ALJ who must determine the significance of those limitations after properly determining whether Plaintiffs truly has them based on the evidence. But the ALJ may not disregard either limitation without sufficient justification, and because she did not provide adequate justification for rejecting the superficial-interaction-limitation, she erred.

**B.     The ALJ incorrectly rejected several lay witness statements.**

Plaintiff argues that the ALJ erred in rejecting several lay witness statements. First, Plaintiff argues that the ALJ erred by disregarding without comment the statement of Mary LaRoche, Executive Director of SEEDs for Autism. (Pl. Br. at 17.) Second, Plaintiff argues that the ALJ provided insufficient reasons for rejecting statements from Plaintiff's mother,

---

[2] Defendant argues that it was sufficient for the ALJ to merely identify that the reviewing doctors did not consider the most recent medical records in order to reject their specific findings. (Def. Br. at 14.) Defendant apparently argues that this rationale is a sufficient basis regardless of whether any of the most recent records actually undermine the reviewing doctors' opinions. (*Id.*) These arguments are incorrect. The ALJ's rationale must be supported by substantial evidence to be sufficient, but it is not if it is inconsistent with the evidence. Unless the records the ALJ referred to actually support the proposition for which she cited them, the ALJ's reasoning is inadequate. *See Thomas*, 278 F.3d at 954.

grandmother, and Kathy Kittell (the mother of another autistic child). (*Id*. at 18.) The Court agrees with Plaintiff's arguments.

The ALJ rejected LaRoche's statement without comment, and rejected the other statements for several reasons. (R. at 27.) First, the ALJ found the statements were inconsistent with the objective medical evidence. (*Id*.) Second, she found that the statements were necessarily biased based on the observers' relationships with Plaintiff. (*Id*.) Finally, she found that the statements were unreliable because they were not based on medical criteria and were not offered by medical sources. (*Id*.)

None of the reasons the ALJ offered for rejecting the lay witness statements are sufficient. Furthermore, it was error to reject LaRoche's statement without comment. *See Bruce v. Astrue*, 557 F.3d 1113, 1115-16 (9th Cir. 2009.) Initially, an ALJ must consider lay witness testimony even if it is uncorroborated by the medical evidence. *See, e.g., Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir. 1996). Similar to a claimant's symptom testimony, lay witness testimony is valuable precisely because it can reveal limitations or observations not captured by the medical evidence. Second, a lay witness need not be medically trained to provide testimony about a claimant's ability to work. *See* 20 C.F.R. § 404.1513(d) (providing that lay witness testimony may be introduced "to show the severity of [the claimant's] impairment(s) and how it affects [her] ability to work"); *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir.1993). So the ALJ could not reject the statements merely because they were not medical opinions. Finally, although the ALJ could permissibly reject the statements because of bias, third-party statements are not inherently biased, and the ALJ must therefore identify evidence of bias. Here, the ALJ did not offer any evidence that the statements are biased. Accordingly, the ALJ erred in rejecting the lay witness statements.

Although it can be harmless error when the ALJ improperly rejects lay witness testimony but properly rejects a claimant's symptom testimony for reasons equally applicable to the lay witness testimony, that is not the case here. *See Molina*, 674 F.3d at 1117. The ALJ did not offer any valid reasons for rejecting Plaintiff's symptom testimony

that are equally applicable to the lay witness statements. The sole reason the ALJ provided for rejecting Plaintiff's symptom testimony was that it was unsupported by the medical evidence. This is an insufficient basis for rejecting lay witness statements. Accordingly, the ALJ's error was not harmless.

### C. Remand.

The credit-as-true rule, if applied here, results in a remand of Plaintiff's case for a computation and payment of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). It applies if each part of a three-part test is satisfied. *Id*. First, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id*. Next, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Further administrative proceedings serve a useful purpose when there are outstanding conflicts or ambiguities in the evidence that require resolution. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. *Garrison*, 759 F.3d at 1020. Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

Here, all three factors are met, and the credit-as-true rule applies. The ALJ incorrectly rejected the reviewing doctors' opinions, and, if those opinions are credited as true, a finding that Plaintiff is disabled would be required. Further proceedings would serve no useful purpose. Accordingly, the Court will remand for calculation of benefits.

**IT IS THEREFORE ORDERED** reversing the May 3, 2018 decision of the Administrative Law Judge (R. at 13–33), as upheld by the Appeals Council (R. at 1–6).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for calculation of benefits consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 30th day of September, 2020.

_____
Honorable John Z. Boyle
United States Magistrate Judge